IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DIVYA A. HAZEL
7961 Millstream Court
Elkridge, Maryland 21075

Plaintiff,

LLOYD AUSTIN
Secretary of Defense,

and

UNITED STATES DEPARTMENT OF DEFENSE

Defendants.

Case: 1:21-cv-00549 JURY DEMAND
Assigned To : Friedrich, Dabney L.
Assign. Date : 2/16/2021
Description: Pro Se Gen. Civ. (F-DECK)

...oooOooo...

## COMPLAINT

NOW COMES Plaintiff Divya A. Hazel and hereby files this Complaint against Defendants for discrimination based on disability, and in support thereof states the following:

### THE PARTIES

1. Plaintiff Divya A. Hazel is a resident of Elkridge, Howard County, Maryland, and is a former employee of the Defense Intelligence Agency, a division of the United States Department of Defense.

2. Defendants United States Department of Defense ("DOD") is an executive branch department of the federal government related to national security and the United States Armed Forces, and Lloyd Austin ("Austin"), who replaced Mark T. Esper in January 2021, is the present head of the department operating under the title Secretary of Defense.

### JURISDICTION AND VENUE

3. Subject matter jurisdiction is proper in this Court pursuant to 42 U.S.C. § 12101 *et seq.* as the case arises under federal law, the Americans with Disabilities Act of 1990 ("ADA"), and Section 504, Rehabilitation Act of 1973, 129 U.S.C. § 701, et. seq.. Personal

jurisdiction is also proper in this Court because Defendant transacts extensive business in Washington, D.C., and the events giving rise to this litigation took place in the District of Columbia.

4. Venue is proper in the Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in the District of Columbia.

## FACTS

5. Ms. Hazel worked as a program analyst/intern for the Equal Employment Opportunity office of the Defense Intelligence Agency during the period July 11, 2016 to September 30, 2016.

6. Ms. Hazel became an intern through the Workforce Recruitment Program ("WRP"), a recruitment and referral program that connects employers with college students and recent graduates who suffer from disabilities.

7. Ms. Hazel was supervised by Ms. Jillian Carilli, deputy chief, and Ms. Ilsa Ferro, chief.

8. Because Ms. Hazel was affiliated with WRP, the Defendant was already aware of her status as a disabled individual.

9. Ms. Hazel suffers from frequent chronic migraine headaches, Sensory Processing Disorder, ADHD, and she has severe allergies.

10. Moreover, Ms. Hazel suffers from shoulder pain, weakness in several parts of her body, plantar fasciitis, back nerve damage, cognitive deficiency and traumatic brain injury as a result of a car injury.

11. Ms. Hazel also suffers from learning disability and experiences auditory processing difficulty, and she has difficulties spelling and writing.

12. On or about July 19, 2016, Ms. Hazel submitted a written request for reasonable accommodation. The request was accompanied by a letter from Ms. Hazel's doctor supporting the request.

13. The week before, Ms. Hazel informed her supervisors Ms. Carilli and Ms. Ferro about the accommodations necessary in order to perform Ms. Hazel's job duties.

14. The accommodations consisted of, among several things, foot and back rests, frequent breaks, Dragon Naturally Speaking software, Kurzweil 3000 software, extended work time to complete assignments, and an ergonomic keyboard with wrist support.

15. Both Ms. Carilli and Ms. Ferro were informed about the requests.

16. Soon after requesting the accommodations, management and other members of the staff started treating Ms. Hazel differently. Unfounded negative remarks were made about Ms. Hazel's appearance; undesirable work assignments were given to Ms. Hazel; Ms. Hazel was assigned tasks that directly contradicted her limitations, as per her doctor's recommendations; her work was unjustly scrutinized; Ms. Hazel's workload increased disproportionally to that of her coworkers; Ms. Hazel was given unreasonable deadlines in which to complete assignments; Ms. Hazel was not paid for work performed beyond her duty hours; Ms. Hazel's need for disability assigned parking was called into question; and the general attitude toward Ms. Hazel was one of hostility.

17. On or about September 8, 2016, Ms. Carilli, for the first time communicated to Ms. Hazel about alleged work performance concerns that Ms. Ferro allegedly had noticed. Prior to September 8, Ms. Ferro and Ms. Carilli had always praised Ms. Hazel for her work

performance and neither Ms. Ferro nor Ms. Carilli had ever suggested that Ms. Hazel's work performance was anything but satisfactory.

18. Ms. Carilli stated that Ms. Hazel had neglected to check on tasks in the morning. The whole office, including Ms. Carilli, were aware that Ms. Hazel had been experiencing computer issues all morning that had prevented her from doing any work.

19. What is more, the evaluation that Ms. Hazel was to receive by Ms. Carilli on August 19 was delayed until September 8. Ms. Hazel is not aware of anyone else's review being delayed or anyone else being treated the way Ms. Hazel was.

20. While the evaluation was conducted, Ms. Hazel was not provided with any constructive criticism and Ms. Carilli did not provide any meaningful feedback that could address any alleged performance deficiency. Moreover, the evaluation contained false contentions that Ms. Hazel had not been performing tasks which she in reality had performed.

21. Ms. Hazel expressed to Ms. Carilli that the ratings were unfair and largely attributable to delays caused by computer issues – none of which Ms. Hazel had any control over.

22. Ms. Carilli remained unwilling to listen to Ms. Hazel's concerns.

23. Ms. Hazel's request to be accommodated kept being delayed and when Ms. Hazel attempted to discuss her concerns with Ms. Carilli as well as other members of management, nobody was willing to help. Instead, Ms. Hazel was labeled a "cry-baby."

24. Noticing that her working conditions were deteriorating more and more, Ms. Hazel in early September 2016 communicated to management that she would have no alternative but to file an EEO complaint if the conditions did not improve.

25. As a result of Ms. Hazel communicating that she would file an EEO complaint, the treatment of Ms. Hazel worsened even more. Ms. Hazel was verbally abused by

management and co-workers; management stereotyped Ms. Hazel as incompetent and worthless, which in turn caused great interference with the performance of Ms. Hazel's existing assignments and led to further ostracism from Ms. Hazel's work team; management and co-workers berated Ms. Hazel with vulgar, profane language, they laughed at her, ridiculed her, and ignored her by belittling her whenever an opportunity arose.

26. Ms. Hazel reached out to Ms. Fisher, the reasonable accommodation manager, toward the end of September who expressed shock at how Ms. Hazel had been abused.

27. Ms. Fisher stated that there had been no request made to her for the software that Ms. Hazel needed to perform her job.

28. Ms. Fisher apologized for how Ms. Hazel had been treated and expressed that she thought because Ms. Carilli was fairly new, she may not have been familiar with equal employment laws.

29. Around the same time, Ms. Hazel met with Ms. Ferro to discuss her concerns. Ms. Hazel expressed in vain that she felt she had been discriminated against and detailed the events that had led up to present.

30. Getting no help from Ms. Ferro, Ms. Hazel also made contact with the Inspector General Chief of Staff and explained that she felt was the victim of discrimination and that she wanted to file a complaint for how she had been treated.

31. In the end, Ms. Hazel's concerns were ignored by the Defendant and Ms. Hazel's tenure with Defendant ended on September 30, 2016, as a result of Defendant's failure to add Ms. Hazel to the hiring pool.

32. The discriminatory practices engaged in by Defendants are intentional and systemic in nature, and adversely affected Plaintiff with respect to terms and conditions of employment.

33. As a result of Defendant's failure to comply with the requirements of the ADA and the Rehabilitation Act, Ms. Hazel has suffered serious damages.

## COUNT 1 – AMERICANS WITH DISABILITIES ACT

34. Plaintiff re-alleges and incorporates by reference the remainder of the allegations set forth in the Complaint as if fully set forth herein.

35. During all relevant times, Defendant was Ms. Hazel's "employer" under the ADA.

36. Ms. Hazel was a qualified individual who was able to perform all aspects of her position but she is disabled within the meaning of the ADA.

37. Ms. Hazel's physical and psychological impairments do not substantially limit her ability to work as a program analyst, but Defendant's discriminatory practices precluded her from doing so.

38. Defendant intentionally discriminated against Ms. Hazel based on the fact that she is disabled, in violation of the ADA.

39. Defendant made discriminatory and prejudicial comments and engaged in other behavior directly bearing on Ms. Hazel's status as a disabled employee, Defendant terminated Ms. Hazel's employment based on purely pretextual and false reasons, and Defendant treated Ms. Hazel differently than similarly-situated employees who did not suffer from physical and psychological impairments and were not disabled.

40. Ms. Hazel suffered substantial damages as a direct and proximate result of

Defendant's unlawful and discriminatory conduct, including emotional distress and loss of wages and benefits.

41.     Since the termination of her employment, Ms. Hazel has used all reasonable efforts to mitigate her damages by seeking alternative employment.

42.     Ms. Hazel filed a formal equal employment opportunity ("EEO") discrimination complaint and a final agency decision ("FAD") on November 5, 2020. Ms. Hazel received the FAD on or about November 6, 2020.

43.     Ms. Hazel has met the statutory requirements of Section 1614.407 Title VII of the Civil Rights Act of 1964 and Section 504, Rehabilitation Act, by filing this Complaint with this Court within 90 days of Mr. Hazel's receipt of the FAD.

## COUNT II – SECTION 504, REHABILITATION ACT

44.     Plaintiff re-alleges and incorporates by reference the remainder of the allegations set forth in the Complaint as if fully set forth herein.

45.     Section 504 of the Rehabilitation Act of 1973 prohibits recipients of federal Funding from denying to persons with disabilities, on the basis of disability, the benefits provided by the federal funds recipient, or from subjecting persons with disabilities to discrimination. 29 U.S.C. § 794; 49 C.F.R. Pt. 27.

46.     Defendants receive federal funding.

47.     Defendants have violated Section 504 by discriminating against Plaintiff in the manner described in and complained of herein.

48.     Defendants' violations of Section 504 have harmed and will continue to harm Plaintiff in the future.

## COUNT III – ADA – FAILURE TO ACCOMMODATE

49. Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of this Complaint as if the same were fully set forth herein.

50. Ms. Hazel is disabled as defined by the ADA.

51. Ms. Hazel informed DOD of her conditions and requested that she be accommodated per her doctor's recommendations.

52. Defendant had accommodations available that would have been effective and would not have posed an undue hardship on Defendants.

53. Defendant nevertheless failed to provide Ms. Hazel with the necessary accommodations.

## COUNT IV – RETALIATION

54. Plaintiff repeats and realleges all of the allegations in the preceding paragraphs of this Complaint as if the same were fully set forth herein.

55. Ms. Hazel is disabled as defined by the ADA, entitled to protection against disability discrimination under Title VII.

56. During all relevant times, DOD was Ms. Hazel's "employer" for purposes of Title VII.

57. Ms. Hazel engaged in protected activity under Title VII when she complained to DOD about the illegal workplace discrimination.

58. After complaining of disability discrimination complaint, Mr. Hazel was subjected to adverse action when she was continuously berated, ridiculed, bullied, and harassed.

59. The harassment was causally connected to her disability discrimination complaint.

60. On September 30, 2016, Ms. Hazel's employment with DOD ended.

WHEREFORE, Plaintiff demands judgment in an amount greater than five-hundred thousand dollars ($500,000.00) against Defendant in compensatory damages, including back pay and front pay, punitive damages, attorneys' fees, interest, costs, and any and all other relief deemed appropriate by this Court, including but not limited to injunctive relief requiring Defendant to reinstate Ms. Hazel.

Dated: February 3, 2021                    Respectfully submitted,

_____
Divya A. Hazel

## PRAYER FOR JURY TRIAL

Plaintiff Divya A. Hazel hereby requests a jury trial.

_____
Divya A. Hazel

